UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVYN ENCARNACION, an individual; RICQUAN JONES, an individual; and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UGO LOGISTICS, LLC, a Massachusetts Limited Liability Company; HENRY EMELE, an individual; KARA EMELE, an individual; and DOES 1-10, inclusive,<br><br>Defendants. | Civil Action No.:<br><br>**COLLECTIVE ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

**INDIVIDUAL AND COLLECTIVE ACTION COMPLAINT**

**AND DEMAND FOR JURY TRIAL**

Plaintiffs Davyn Encarnacion and Ricquan Jones (together, the "Named Plaintiffs"), individually and on behalf of all similarly-situated employees, by and through their counsel of Muller Law, LLC and Carpenter & Zuckerman, do hereby state and allege as follows:

**INTRODUCTION**

1. This is an action seeking payment of overtime premiums and other damages due to Named Plaintiffs and other similarly-situated hourly-payed workers (together, "Plaintiffs") under federal law. Defendants exploited these workers, all or most of whom had little knowledge of their rights. Defendants willfully failed to pay Plaintiffs premium wages for overtime work.

2. Plaintiffs worked for all Defendants from Defendant UGO Logistics, LLC's main headquarters located at 350 Revolutionary Drive, East Taunton, Massachusetts, 02718. Plaintiffs worked as package delivery drivers for Defendants, with their main focus being the delivery of Amazon packages as interstate transportation workers. All Plaintiffs suffered similar injustices.

## JURISDICTION AND VENUE

3. Subject matter jurisdiction over this action is conferred on this court under the provisions of 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

4. Venue in this district is appropriate pursuant to 28 U.S.C. § 1391 because the events or omissions giving rise to the claims herein occurred in this district, primarily at UGO Logistics, LLC's main headquarters in East Taunton, Massachusetts.

## THE PARTIES

5. Plaintiff Davyn Encarnacion ("Encarnacion") is a resident of New Bedford, Massachusetts.

6. Plaintiff Ricquan Jones ("Jones") is a resident of New Bedford, Massachusetts.

7. Defendant UGO Logistics, LLC ("UGO") is a Massachusetts limited liability corporation, with its primary headquarters in East Taunton, Massachusetts.

8. Defendant Henry Emele ("Mr. Emele") is a resident of Manchester, New Hampshire.

9. Defendant Kara Emele ("Ms. Emele") is a resident of Manchester, New Hampshire.

10. Each Plaintiff was employed by Defendants in Massachusetts within the applicable statute of limitations period and is entitled to the rights, protection and benefits provided under the Fair Labor Standards Act ("FLSA").

11.     Plaintiffs reserve their right to amend their Complaint in the future and add other parties to this matter.

## FACTUAL ALLEGATIONS

**A. Defendants Directed and Controlled the Work Performed and Pay Received by Plaintiffs as Interstate Package Delivery Drivers**

12.     On information and belief, during the relevant time period, Mr. Emele and Ms. Emele owned or otherwise controlled UGO.

13.     On information and belief, during the relevant time period, Mr. Emele and Ms. Emele made or influenced key decisions regarding the business dealings of UGO, including decisions regarding financial and payroll matters.

14.     On information and belief, during the relevant time period, Mr. Emele and Ms. Emele kept the books for UGO, including keeping records tracking financial and payroll matters.

15.     During the relevant time period, Mr. Emele and Ms. Emele approved and signed paychecks paid by UGO to Named Plaintiffs and Plaintiffs. Defendants also approved and signed paychecks paid to Named Plaintiffs and Plaintiffs.

16.     On information and belief, Defendants served as delivery service providers ("DSPs") for Amazon. During the relevant time period, Mr. Emele and Ms. Emele employed workers to work delivering Amazon packages as interstate transportation workers.

17.     During the relevant time period, Defendants employed many workers, including Named Plaintiffs and Plaintiffs and others to work delivering Amazon packages as interstate transportation workers.

18.     On information and belief, Encarnacion worked for Defendants as a package delivery driver from July 28, 2021 to August 15, 2021. Similarly, Jones worked for Defendants as a package delivery driver throughout the same time period.

19. Defendants continuously provided Named Plaintiffs and Plaintiffs with instructions and directives throughout the relevant time period as to how to conduct and carry out their duties as package delivery drivers. Defendants also determined what projects Named Plaintiffs and Plaintiffs would work on and the delivery routes Named Plaintiffs and Plaintiffs were to use. Defendants also provided all of the tools and equipment necessary for Named Plaintiffs and Plaintiffs to carry out their duties.

20. Defendants, and supervisors working for them, also determined the starting times, meal break, and ending times worked by Named Plaintiffs and Plaintiffs. Defendants, and supervisors working for them, instructed Named Plaintiffs and Plaintiffs when to arrive to work, which generally was 10:30 a.m., and when and for how long to take an unpaid meal break, which was generally 30 minutes around noon. Defendants, and supervisors working for them, dictated when the Named Plaintiffs and Plaintiffs could leave for the day, which was generally dependent on factors including the number of Plaintiffs working, the number of packages delivered, and the deadline by which packages needed to be delivered.

21. Defendants determined the number of days worked each week by the Named Plaintiffs and Plaintiffs. For instance, Defendants usually confirmed the Named Plaintiffs' work schedules via text messages.

22. By determining the hours each day and the number of days worked by the Named Plaintiffs and Plaintiffs each week, Defendants, and supervisors working for them, controlled the total amount of time worked by the Named Plaintiffs and Plaintiffs.

23. Defendants, and supervisors working for them, also tracked and maintained records of the time Named Plaintiffs and Plaintiffs worked. Specifically, Defendants tracked and maintained records with the use of punched time cards.

24. In spite of these procedures, Defendants would improperly manually adjust the punch times worked by Named Plaintiffs and Plaintiffs. For example, Defendants would often have the Named Plaintiffs work under false credentials when submitting their punch cards. Further, Defendants would also fail to properly record the work time the Named Plaintiffs dedicated to performing managerial tasks for Defendants.

25. Defendants also prepared and signed weekly timesheet invoices, setting forth the total hours worked by Named Plaintiffs and Plaintiffs working that week based on the punch-cards, as adjusted by Defendants.

26. Defendants used the timesheets prepared by themselves to determine the time worked by, and the wages owed to, Named Plaintiffs and Plaintiffs.

27. In addition to controlling the hours Named Plaintiffs and Plaintiffs worked, and the particular delivery routes they worked on, Defendants also controlled other conditions under which Named Plaintiffs and Plaintiffs worked. Named Plaintiffs and Plaintiffs were required to wear specific uniforms and badges at all times while performing their job duties as interstate package delivery drivers. Defendants frequently tracked Named Plaintiffs and Plaintiffs while they were working and pushed them to work faster, creating a high-stress environment.

28. During the relevant time period, Defendants also would routinely force Named Plaintiffs and some Plaintiffs to use the working credentials of other interstate package delivery drivers. As a result of this practice, other drivers would receive credit and pay for the work performed by Named Plaintiffs and some Plaintiffs. As such, Named Plaintiffs and some Plaintiffs never received payment for the overtime work they performed under these false credentials.

29. Furthermore, as a result of this practice, Defendants did not record Named Plaintiffs' and some Plaintiffs' overtime work hours. Upon information and belief, Defendants forced Named Plaintiffs and some Plaintiffs to use other workers' working credentials in an effort to circumvent federal and state law, including, but not limited to, those discussed in this Complaint. Defendants would frequently tell Named Plaintiffs "I will hook you up. I will take care of you" if they took part in Defendants' practice.

30. During the relevant time period, and at the direction of Defendants, the Named Plaintiffs and some Plaintiffs would often assume management duties outside of the scope of their employment. At the direction of Defendants, Named Plaintiffs and some Plaintiffs did not record the time they worked performing the management duties. Named Plaintiffs and some Plaintiffs were never compensated for their work in performing these management duties despite working additional time to complete such work.

31. Defendants also supplied safety equipment to Named Plaintiffs and Plaintiffs; however, the equipment provided was often inadequate and unsafe.

32. Defendants also had the authority to, and did, discipline, hire, and fire Named Plaintiffs and Plaintiffs.

33. For example, Defendants would frequently chastise, belittle, and threaten Named Plaintiffs and Plaintiffs with termination for working too slowly or making mistakes. Defendants also threatened Plaintiffs with termination if they asked to leave due to illness or injury.

34. Defendants also determined when Named Plaintiffs and Plaintiffs could be laid off when work slowed, and Defendants decided whether and when to terminate Named Plaintiffs and Plaintiffs for any reason they so decided.

**B. Plaintiffs Regularly Worked Overtime Hours for Defendants**

35.     During the relevant time period, Named Plaintiffs and Plaintiffs were promised a regular hourly rate of $17.50 ("Straight Time Pay") while working as package delivery drivers for Defendants. Importantly, Named Plaintiffs and Plaintiffs were to make one and a half times their regular hourly rate, or $26.25, ("Overtime Pay") as their overtime hourly rate.

36.     During the relevant time period, when they were hired Named Plaintiffs and Plaintiffs were promised a work schedule that consisted of working from 12:00 p.m. to 8:00 p.m., for five days a week (Monday through Friday). Instead of working these promised work schedules, Named Plaintiffs' and Plaintiffs' work schedules would often exceed these promised times. For example, Named Plaintiffs would routinely work from 10:30 a.m. to 9:00 p.m. seven days a week at the demand of Defendants. Thus, Named Plaintiffs routinely worked in excess of seventy (70) hours per week, including working at least ten (10) hours per each weekend day. In fact, Defendants regularly asked Named Plaintiffs to work on their days off. Furthermore, at one time, Named Plaintiffs worked thirteen (13) days straight at the command of Defendants.

37.     During the relevant time period, and at the direction of Defendants, the Named Plaintiffs and some Plaintiffs would often assume management duties outside of the scope of their employment. At the direction of Defendants, Named Plaintiffs and some Plaintiffs did not record the time they worked performing the management duties. Named Plaintiffs and some Plaintiffs were never compensated for their work in performing these management duties despite working additional time to complete such work.

38.     During the relevant time period, Defendants also would routinely force Named Plaintiffs and some Plaintiffs to use the working credentials of other interstate package delivery drivers, including when performing overtime work. As such, Named Plaintiffs and some

Plaintiffs never received payment for the overtime work they performed under these false credentials.

39. Furthermore, as a result of this practice, Defendants did not record Named Plaintiffs' and some Plaintiffs' overtime work hours. Upon information and belief, Defendants forced Named Plaintiffs and some Plaintiffs to use other workers' working credentials in an effort to circumvent federal and state law, including, but not limited to, those discussed in this Complaint.

**C. Defendants Willfully Failed to Pay Plaintiffs Overtime Wages**

40. Named Plaintiffs and Plaintiffs hereby incorporate paragraphs 35-39.

41. During the relevant time period, Defendants followed a policy and practice of refusing to provide Named Plaintiffs and Plaintiffs with accurate pay slips or earnings statements with their paychecks showing the name of the employer and employee, the day, month, year, number of hours worked, the hourly rate, and the amounts of deductions or increases made for the pay period.

42. During the relevant time period, Defendants were required to pay Named Plaintiffs and Plaintiffs Overtime Premium Pay for all overtime hours they worked.

43. On one or more occasions, Named Plaintiffs complained to Defendants and supervisors working for them, that they were not getting paid any overtime wages.

44. During the relevant time period, Defendants followed a policy and practice of refusing to pay Named Plaintiffs and Plaintiffs for the overtime work they performed for Defendants as interstate package delivery drivers.

45. During the relevant time period, Defendants followed a policy and practice of failing to include Overtime Premium Pay due to Named Plaintiffs and Plaintiffs for their last

week or two of work in late payments made to Named Plaintiffs and Plaintiffs for their final weeks of work.

### D. Plaintiffs Not Paid To Date

46. To date, Defendants have still not paid Named Plaintiffs and Plaintiffs Overtime Premium Pay for time worked over 40 hours in a workweek.

47. Importantly, to date, Defendants have not paid Named Plaintiffs a single dime regarding their continuous work, from 10:30 a.m. to 9:00 p.m. for thirteen (13) straight days during their time working as interstate package delivery drivers for Defendants.

## COLLECTIVE ACTION REPRESENTATION ALLEGATIONS

48. Named Plaintiffs bring this Collective Action claim pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of themselves and all similarly-situated employees who worked for the Defendants as hourly-paid employees as interstate transportation workers anytime during the period starting three years prior to the filing of this Complaint through the present ("FLSA Overtime Collective Members").

49. Named Plaintiffs, Plaintiffs, and potential FLSA Overtime Collective Members and potential FLSA Collective Members worked more than forty (40) hours in one or more workweeks.

50. To date, Named Plaintiffs, Plaintiffs, and potential FLSA Overtime Collective Members have not received a single overtime premium payment for their overtime work performed as interstate package delivery drivers for Defendants.

## CLAIMS FOR RELIEF

### COUNT I
### FAILURE TO PAY OVERTIME
### FAIR LABOR STANDARDS ACT, 29 U.S.C § 201 *et seq.*
(On Behalf of Named Plaintiffs, Plaintiffs, and All Other FLSA Collective Members Against All Defendants)

51. Named Plaintiffs and all other FLSA Collective Members repeat and incorporate by reference all allegations above and below as if fully set forth here.

52. On information and belief, during the relevant period of time, Defendants, either individually or acting in concert, or through their supervisors, were an enterprise engaged in commerce or in the production of goods for commerce, as defined by 29 U.S.C. § 201 *et seq*.

53. During the relevant time period, each Named Plaintiff and all other FLSA Collective Members were engaged in commerce or in the production of goods for commerce, as defined by 29 U.S.C. § 201 *et seq*.

54. During the relevant time period, each Defendant permitted the Named Plaintiffs and all other FLSA Collective Members to work as package delivery drivers.

55. During the relevant time period, each Defendant acted directly or indirectly in the interest of the Named Plaintiffs' and all other FLSA Collective Members' employers under the FLSA and were the Named Plaintiffs' and all other FLSA Collective Members' employers, as defined by 29 U.S.C. § 201 *et seq*.

56. Pursuant to the FLSA, 29 U.S.C. § 207(a), Defendants were required to pay the Named Plaintiffs and all other FLSA Collective Members one and a half times the regular rate at which they were employed for all time they worked over forty (40) hours in a workweek.

57. During the relevant time period, Defendants regularly followed a policy and practice of refusing to pay Overtime Premium Pay to the Named Plaintiffs and all other FLSA

Collective Members.

58. Defendants' failure to pay the Named Plaintiffs and all other FLSA Collective Members Overtime Premium Pay violates the FLSA.

59. Defendants acted willfully or with reckless disregard as to their obligation to pay the Named Plaintiffs and all other FLSA Collective Members Overtime Premium Pay, and accordingly, the violation was willful for purposes of the FLSA, 29 U.S.C. §§ 255(a) and 260.

60. Defendants are jointly and severally liable to the Named Plaintiffs and all other FLSA Collective Members under the FLSA for their failure to pay Overtime Premium Pay to the Named Plaintiffs and all other FLSA Collective Members in an amount equal to such unpaid Overtime Premium Pay.

61. Defendants are also jointly and severally liable to the Named Plaintiffs and all other FLSA Collective Members for liquidated damages on unpaid Overtime Premium Pay, as well as attorneys' fees, costs, interest, and all other relief deemed just and proper.

## **REQUEST FOR RELIEF**

WHEREFORE, Named Plaintiffs Davyn Encarnacion and Ricquan Jones, individually and on behalf of similarly-situated employees, respectfully request as follows:

    A.    That Defendants be summoned to appear and answer this Complaint;

    B.    For an order of this Honorable Court entering judgment in their favor against Defendants, jointly and severally, in their actual economic damages in an amount to be determined at trial;

    C.    For liquidated damages;

    D.    For their attorneys' fees, costs, and pre-and post-judgment interest; and

    E.    For such other and further relief, including, but not limited to, injunctive relief, compensatory damages, and punitive damages, as this Court deems necessary, just and proper.

Respectfully submitted,
PLAINTIFFS, DAVYN ENCARNACION and RICQUAN JONES, individually and on behalf of all others similarly situated
By Their Attorneys,

*/s/ Chip Muller*
Chip Muller, Esq. (BBO #672100)
Muller Law, LLC
47 Wood Avenue
Barrington, RI 02806
(401) 256-5171
*chip@mullerlaw.com*

John P. Kristensen, Esq. (*Pro Hac Vice* Pending)
Carpenter & Zuckerman
8827 W. Olympic Blvd.,
Beverly Hills, CA 90211
T: 310-273-1230
*kristensen@cz.law*

## DEMAND FOR JURY TRIAL

Plaintiffs Davyn Encarnacion and Ricquan Jones, individually and on behalf of all similarly-situated employees, by and through their attorneys, demand a TRIAL BY JURY on all counts so triable.

*/s/ Chip Muller*
Chip Muller, Esq. (BBO #672100)
John P. Kristensen (*Pro Hac Vice* Pending)

Dated:   February 23, 2023