## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVYN ENCARNACION, an individual; RICQUAN JONES, an individual; and on behalf of all others similarly situated, )<br><br>Plaintiffs, )<br><br>v. )<br><br>UGO LOGISTICS, LLC, a Massachusetts Limited Liability Company; HENRY EMELE, an individual; KARA EMELE, an individual; and DOES 1-10, inclusive, )<br><br>Defendants. ) | **Civil Action No.: 1:23-cv-10438-IT**<br><br>**CLASS & COLLECTIVE ACTION**<br><br>**FIRST AMENDED CLASS AND COLLECTIVE COMPLAINT FOR DAMAGES & INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

## INDIVIDUAL, CLASS, AND COLLECTIVE ACTION COMPLAINT

## AND DEMAND FOR JURY TRIAL

Plaintiffs Davyn Encarnacion and Ricquan Jones (together, the "Named Plaintiffs"), individually and on behalf of all similarly-situated employees, including opt in Plaintiffs and Rule 23 class members (collectively, "Plaintiffs"), by and through their counsel of Muller Law LLC and Carpenter & Zuckerman, do hereby state and allege as follows:

## INTRODUCTION

1.      This is an action seeking payment of overtime premiums and other damages due to Plaintiffs and other similarly-situated workers (together, "Plaintiffs") under Federal law and Massachusetts law. Defendants exploited these workers, all or most of whom had little knowledge of their rights. Defendants willfully failed to pay Plaintiffs and members of the class

and collective premium wages for overtime work.

2.      Plaintiffs worked for all Defendants from Defendant UGO Logistics, LLC's main headquarters located at 350 Revolutionary Drive, East Taunton, Massachusetts, 02718. Plaintiffs worked as package delivery drivers for Defendants, with their main focus being the delivery of Amazon packages as interstate transportation workers. All Plaintiffs suffered similar injustices.

## JURISDICTION AND VENUE

3.      Subject matter jurisdiction over this action is conferred on this court under the provisions of 28 U.S.C. § 1331 and 29 U.S.C. § 216(b). Plaintiff's Massachusetts state law claims for relief are within the supplemental jurisdiction of the Court pursuant to 28 U.S.C. § 1367(a).

4.      Venue in this district is appropriate pursuant to 28 U.S.C. § 1391 because the events or omissions giving rise to the claims herein occurred in this district, primarily at UGO Logistics, LLC's main headquarters in East Taunton, Massachusetts.

5.      On or about April 5 and 6, 2023, Plaintiffs filed complaints with the Massachusetts Attorney General's Office complaining that Defendants failed to pay them and Class Plaintiffs wages for all hours worked and overtime premium pay for all hours worked over 40 in a workweek.  On April 7, 2023, the Massachusetts Attorney General's office issued notices of right to file suit to Plaintiffs.

## THE PARTIES

6.      Plaintiff Davyn Encarnacion ("Encarnacion") is a resident of New Bedford, Massachusetts.

7.      Plaintiff Ricquan Jones ("Jones") is a resident of New Bedford, Massachusetts.

8.      Defendant UGO Logistics, LLC ("UGO") is a Massachusetts limited liability

corporation, with its primary headquarters in East Taunton, Massachusetts.

9.      Defendant Henry Emele ("Mr. Emele") is a resident of Manchester, New Hampshire.

10.     Defendant Kara Emele ("Ms. Emele") is a resident of Manchester, New Hampshire.

11.     Each Plaintiff was employed by Defendants in Massachusetts within the applicable statute of limitations period and is entitled to the rights, protection and benefits provided under the Fair Labor Standards Act ("FLSA") and the Massachusetts Fair Minimum Wage Act ("FMWA"), Mass. Gen.Laws ch. 151, §1A.

12.     Plaintiffs reserve their right to amend their Complaint in the future and add other parties to this matter.

## FACTUAL ALLEGATIONS

**A.  Defendants Directed and Controlled the Work Performed and Pay Received by Plaintiffs as Interstate Package Delivery Drivers**

13.     On information and belief, during the relevant time period, Mr. Emele and Ms. Emele owned or otherwise controlled UGO.

14.     On information and belief, during the relevant time period, Mr. Emele and Ms. Emele made or influenced key decisions regarding the business dealings of UGO, including decisions regarding financial and payroll matters.

15.     On information and belief, during the relevant time period, Mr. Emele and Ms. Emele kept the books for UGO, including keeping records tracking financial and payroll matters.

16.     During the relevant time period, Mr. Emele and Ms. Emele approved and signed paychecks paid by UGO to Named Plaintiffs and Plaintiffs. Defendants also approved and signed

paychecks paid to Named Plaintiffs and Plaintiffs.

17.     On information and belief, Defendants served as delivery service providers ("DSPs") for Amazon. During the relevant time period, Mr. Emele and Ms. Emele employed workers to work delivering Amazon packages as interstate transportation workers.

18.     During the relevant time period, Defendants employed many workers, including Named Plaintiffs and Plaintiffs and others to work delivering Amazon packages as interstate transportation workers.

19.     On information and belief, Encarnacion worked for Defendants as a package delivery driver from July 28, 2021 to August 15, 2021. Similarly, Jones worked for Defendants as a package delivery driver throughout the same time period.

20.     Defendants continuously provided Named Plaintiffs and Plaintiffs with instructions and directives throughout the relevant time period as to how to conduct and carry out their duties as package delivery drivers. Defendants also determined what projects Named Plaintiffs and Plaintiffs would work on and the delivery routes Named Plaintiffs and Plaintiffs were to use. Defendants also provided all of the tools and equipment necessary for Named Plaintiffs and Plaintiffs to carry out their duties.

21.     Defendants, and supervisors working for them, also determined the starting times, meal break, and ending times worked by Named Plaintiffs and Plaintiffs.  Defendants, and supervisors working for them, instructed Named Plaintiffs and Plaintiffs when to arrive to work, which generally was 10:30 a.m., and when and for how long to take an unpaid meal break, which was generally 30 minutes around noon.  Defendants, and supervisors working for them, dictated when the Named Plaintiffs and Plaintiffs could leave for the day, which was generally dependent on factors including the number of Plaintiffs working, the number of packages delivered, and the

deadline by which packages needed to be delivered.

22.     Defendants determined the number of days worked each week by the Named Plaintiffs and Plaintiffs. For instance, Defendants usually confirmed the Named Plaintiffs' work schedules via text messages.

23.     By determining the hours each day and the number of days worked by the Named Plaintiffs and Plaintiffs each week, Defendants, and supervisors working for them, controlled the total amount of time worked by the Named Plaintiffs and Plaintiffs.

24.     Defendants, and supervisors working for them, also tracked and maintained records of the time Named Plaintiffs and Plaintiffs worked. Specifically, Defendants tracked and maintained records with the use of punched time cards.

25.     In spite of these procedures, Defendants would improperly manually adjust the punch times worked by Named Plaintiffs and Plaintiffs. For example, Defendants would often have the Named Plaintiffs work under false credentials when submitting their punch cards. Further, Defendants would also fail to properly record the Named Plaintiffs' work time dedicated to performing managerial tasks for Defendants.

26.     Defendants also prepared and signed weekly timesheet invoices, setting forth the total hours worked by Named Plaintiffs and Plaintiffs working that week based on the punch-cards, as adjusted by Defendants.

27.     Defendants used the timesheets prepared by themselves to determine the time worked by, and the wages owed to, Named Plaintiffs and Plaintiffs.

28.     In addition to controlling the hours Named Plaintiffs and Plaintiffs worked, and the particular delivery routes they worked on, Defendants also controlled other conditions under which Named Plaintiffs and Plaintiffs worked. Named Plaintiffs and Plaintiffs were required to

wear specific uniforms and badges at all times while at the performing their job duties as interstate package delivery drivers. Defendants frequently tracked Named Plaintiffs and Plaintiffs while they were working and pushed them to work faster, creating a high-stress environment.

29.     During the relevant time period, Defendants also would routinely force Named Plaintiffs and some Plaintiffs to use the working credentials of other interstate package delivery drivers. As a result of this practice, other drivers would receive credit and pay for the work performed by Named Plaintiffs and some Plaintiffs. As such, Named Plaintiffs and some Plaintiffs never received payment for the overtime work they performed under these false credentials.

30.     Furthermore, as a result of this practice, Defendants did not record Named Plaintiffs' and some Plaintiffs' overtime work hours. Upon information and belief, Defendants forced Named Plaintiffs and some Plaintiffs to use other workers' working credentials in an effort to circumvent federal and state law, including, but not limited to, those discussed in this Complaint. In several instances, Defendants would frequently tell Named Plaintiffs "I will hook you up. I will take care of you" if they took part in Defendants' practice.

31.     During the relevant time period, and at the direction of Defendants, the Named Plaintiffs and some Plaintiffs would often assume management duties outside of the scope of their employment. At the direction of Defendants, Named Plaintiffs and some Plaintiffs did not record the time they worked performing the management duties. Named Plaintiffs and some Plaintiffs were never compensated for their work in performing these management duties despite working additional time to complete such work.

32.     Defendants also supplied safety equipment to Named Plaintiffs and Plaintiffs;

however, the equipment provided was often inadequate and unsafe.

33.     Defendants also had the authority to, and did, discipline, hire, and fire Named Plaintiffs and Plaintiffs.

34.     For example, Defendants would frequently chastise, belittle, and threaten Named Plaintiffs and Plaintiffs with termination for working too slowly or making mistakes.  Defendants also threatened Plaintiffs with termination if they asked to leave due to illness or injury.

35.     Defendants also determined when Named Plaintiffs and Plaintiffs could be laid off when work slowed, and Defendants decided whether and when to terminate Named Plaintiffs and Plaintiffs for any reason they so decided.

**B.  Plaintiffs Regularly Worked Overtime Hours for Defendants**

36.     During the relevant time period, Named Plaintiffs and Plaintiffs were promised a regular hourly rate of $17.50 ("Straight Time Pay") while working as package delivery drivers for Defendants. Importantly, Named Plaintiffs and Plaintiffs were to make one and a half times their regular hourly rate, or $26.25, ("Overtime Pay") as their overtime hourly rate.

37.     During the relevant time period, when they were hired Named Plaintiffs and Plaintiffs were promised a work schedule that consisted of working from 12:00 p.m. to 8:00 p.m., for five days a week (Monday through Friday). Instead of working these promised work schedules, Named Plaintiffs and Plaintiffs' work schedules would often exceed these promised times. For example, Named Plaintiffs would routinely work from 10:30 a.m. to 9:00 p.m. seven days a week at the demand of Defendants. Thus, Named Plaintiffs routinely worked in excess of seventy (70) hours per week, including working at least ten (10) hours per each weekend day. In fact, Defendants regularly asked Named Plaintiffs to work on their days off. Furthermore, at one time, Named Plaintiffs worked thirteen (13) days straight at the command of Defendants.

38.     During the relevant time period, and at the direction of Defendants, the Named Plaintiffs and some Plaintiffs would often assume management duties outside of the scope of their employment. At the direction of Defendants, Named Plaintiffs and some Plaintiffs did not record the time they worked performing the management duties. Named Plaintiffs and some Plaintiffs were never compensated for their work in performing these management duties despite working additional time to complete such work.

39.     During the relevant time period, Defendants also would routinely force Named Plaintiffs and some Plaintiffs to use the working credentials of other interstate package delivery drivers. As a result of this practice, other drivers would receive credit and pay for the work performed by Named Plaintiffs and some Plaintiffs. As such, Named Plaintiffs and some Plaintiffs never received payment for the overtime work they performed under these false credentials.

40.     Furthermore, as a result of this practice, Defendants did not record Named Plaintiffs' and some Plaintiffs' overtime work hours. Upon information and belief, Defendants forced Named Plaintiffs and some Plaintiffs to use other workers' working credentials in an effort to circumvent federal and state law, including, but not limited to, those discussed in this Complaint. In several instances, Defendants would frequently tell Named Plaintiffs "I will hook you up. I will take care of you" if they took part in Defendants' practice.

**C. Defendants Willfully Failed to Pay Plaintiffs Overtime Wages**

41.     Named Plaintiffs and Plaintiffs hereby incorporate paragraphs 36-40.

42.     During the relevant time period, Defendants followed a policy and practice of refusing to provide Named Plaintiffs and Plaintiffs with accurate pay slips or earnings statements with their paychecks showing the name of the employer and employee, the day, month, year,

number of hours worked, the hourly rate, and the amounts of deductions or increases made for the pay period.

43.     During the relevant time period, Defendants were required to pay Named Plaintiffs and Plaintiffs Overtime Premium Pay for all overtime hours they worked.

44.     On one or more occasions, Named Plaintiffs complained to Defendants and supervisors working for them, that they were not getting paid any overtime premiums.

45.     During the relevant time period, Defendants followed a policy and practice of refusing to pay Named Plaintiffs and Plaintiffs for the overtime work they performed for Defendants as interstate package delivery drivers.

46.     During the relevant time period, Defendants followed a policy and practice of failing to include Overtime Premium Pay due to Named Plaintiffs and Plaintiffs for their last week or two of work in late payments made to Named Plaintiffs and Plaintiffs for their final weeks of work.

### D.  Plaintiffs Not Paid To Date

47.     On April 5, 2023, Encarnacion filed a complaint with the Massachusetts Attorney General ("AG") alleging Defendants violated the law by failing to pay him and similarly situated co-workers wages for all hours worked and overtime wages.  Jones filed a similar complaint with the AG the following day.

48.     To date, Defendants have still not paid Named Plaintiffs and Plaintiffs Overtime Premium Pay for time worked over 40 hours in a workweek.

49.     Importantly, to date, Defendants have not paid Named Plaintiffs a single dime regarding their continuous work, from 10:30 a.m. to 9:00 p.m. for thirteen (13) straight days during their time working as interstate package delivery drivers for Defendants.

## COLLECTIVE ACTION REPRESENTATION ALLEGATIONS

50.     Named Plaintiffs bring this Collective Action claim pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of themselves and all similarly-situated employees who worked for the Defendants as hourly-paid employees as interstate transportation workers anytime during the period starting three years prior to the filing of this Complaint through the present ("FLSA Overtime Collective Members").

51.     Named Plaintiffs, Plaintiffs, and potential FLSA Overtime Collective Members and potential FLSA Collective Members worked more than forty (40) hours in one or more workweeks.

52.     To date, Named Plaintiffs, Plaintiffs, and potential FLSA Overtime Collective Members have not received a single overtime premium payment for their overtime work performed as interstate package delivery drivers for Defendants.

## CLASS ALLEGATIONS

53.     Named Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure and/or other applicable law, on behalf of themselves and all others similarly situated, as member of the proposed class:

> All persons who worked as a package delivery driver for Defendants in the three years preceding April 5, 2023.

54.     Excluded from the Class are governmental entities, Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Class are any judges, justices or judicial officers presiding over this matter and the members of their immediate families and judicial staff.

55.     Plaintiffs do not know the exact number of persons in the Class, but believe them to be in the several hundreds, making joinder of all these actions impracticable.

56.     The identity of the individual members is ascertainable through Defendants' and/or Defendants' agents' records or by public notice.

57.     There is a well-defined community of interest in the questions of law and fact involved affecting the members of the Class.

58.     Plaintiffs will fairly and adequately protect the interest of the Class.

59.     Plaintiffs retained counsel experienced in employment class and collective action litigation.

60.     Plaintiff's claims are typical of the claims of the Class, which all arise from the same operative facts involving Defendants' practices.

61.     A class action is a superior method for the fair and efficient adjudication of this controversy.

62.     Class-wide damages are essential to induce Defendants to comply with the federal and state laws alleged in the Complaint.

63.     Class members are unlikely to prosecute such claims on an individual basis since the individual damages are small. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims, e.g., securities fraud.

64.     Plaintiffs and the Class seek injunctive relief against Defendants to preclude Defendants from failing to comply with Federal and State overtime regulations.

65.     As such, Plaintiffs and the Class seek public injunctive relief to prevent Defendants from continuing with their unlawful business acts and practices as alleged herein to

ensure that Defendants do not continue to harm the general public by continuing to engage in the unlawful business acts and practices as alleged herein.

66.     Defendants acted on grounds generally applicable to the Class thereby making appropriate final declaratory relief with respect to the Class as a whole.

67.     Members of the Class are likely to be unaware of their rights.

68.     Plaintiffs contemplate providing notice to the putative class members by direct mail, electronic email and SMS text messages, and via publication.

69.     Plaintiffs request certification of a hybrid class combining the elements of Fed. R. Civ. P. 23(b)(3) for monetary damages and Fed. R. Civ. P. 23(b)(2) for equitable relief.

70.     This action is properly maintainable as a class action. This action satisfies the numerosity, typicality, adequacy, predominance and superiority requirements for a class action.

71.     **Numerosity**:  The proposed Class is so numerous that individual joinder of all members is impracticable. Due to the nature of the trade and commerce involved, Plaintiffs do not know the number of members in the Class, but believe the Class members number in the hundreds, if not more. Plaintiffs allege that the Class may be ascertained by the records maintained by Defendants.

72.     Plaintiffs and members of the Class were harmed by the acts of Defendants in at least the following ways:  violations of the Massachusetts Fair Minimum Wage Act ("FMWA"), Mass. Gen. Laws ch. 151, §1A.

73.     **Commonality**: There are questions of law and fact common to Plaintiffs and the Class that predominate over any questions affecting only individual members of the Class. These common questions of law and fact include, without limitation:

    i.     Whether Defendants failed to properly pay overtime to delivery workers;

ii.   Whether Defendants violated the Massachusetts Fair Minimum Wage Act ("FMWA"), Mass. Gen. Laws ch. 151, §1A;

iii.   Whether Plaintiff and Class Members are entitled to statutory damages and/or injunctive relief.

74.   **Typicality**:  Plaintiffs' claims are typical of the claims of members of the Class, as Plaintiff was subject to the same common course of conduct by Defendants as all Class members. The injuries to each member of the Class were caused directly by Defendants' wrongful conduct as alleged herein.

75.   **Adequacy of Representation**:  Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs retained counsel with substantial experience in handling complex class action litigation and litigation against employers. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class, and have financial resources to do so.

76.   **Superiority of Class Action**: A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Class members have little interest in individually controlling the prosecution of separate actions because the individual damage claims of each Class member are not substantial enough to warrant individual filings. In sum, for many if not most Class members, a class action is the only feasible mechanism that will allow them an opportunity for legal redress and justice. The conduct of this action as a class action in this forum, with respect to some or all of the issues presented herein, presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each Class member.

77.   Moreover, individualized litigation would also present the potential for varying, inconsistent, or incompatible standards of conduct for Defendants, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. The adjudication of individual Class members' claims would also, as a practical

matter, be dispositive of the interests of other members not parties to the adjudication, and could substantially impair or impede the ability of other Class members to protect their interests.

78.     Plaintiffs and Class members have suffered and will continue to suffer harm as a result of Defendants' unlawful and wrongful conduct. Defendants have acted, or refused to act, on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with regard to the Class members as a whole.

### CLAIMS FOR RELIEF

### COUNT I
### FAILURE TO PAY OVERTIME
### FAIR LABOR STANDARDS ACT, 29 U.S.C § 201 *et seq.*
### (On Behalf of Named Plaintiffs, Plaintiffs, and All Other FLSA Collective Members Against All Defendants)

79.     Named Plaintiffs, and all other FLSA Collective Members repeat and incorporate by reference all allegations above and below as if fully set forth here.

80.     On information and belief, during the relevant period of time, Defendants, either individually or acting in concert, or through their supervisors, were an enterprise engaged in commerce or in the production of goods for commerce, as defined by 29 U.S.C. § 201 *et seq*.

81.     During the relevant time period, each Named Plaintiff and all other FLSA Collective Members were engaged in commerce or in the production of goods for commerce, as defined by 29 U.S.C. § 201 *et seq*.

82.     During the relevant time period, each Defendant permitted the Named Plaintiffs and all other FLSA Collective Members to work as package delivery drivers.

83.     During the relevant time period, each Defendant acted directly or indirectly in the interest of the Named Plaintiffs and all other FLSA Collective Members' employers under the FLSA and were the Named Plaintiffs and all other FLSA Collective Members' employers, as

defined by 29 U.S.C. § 201 *et seq.*

84.     Pursuant to the FLSA, 29 U.S.C. § 207(a), Defendants were required to pay the Named Plaintiffs and all other FLSA Collective Members one and a half times the regular rate at which they were employed for all time they worked over forty (40) hours in a workweek.

85.     During the relevant time period, Defendants regularly followed a policy and practice of refusing to pay Overtime Premium Pay to the Named Plaintiffs and all other FLSA Collective Members.

86.     Defendants' failure to pay the Named Plaintiffs and all other FLSA Collective Members Overtime Premium Pay violates the FLSA.

87.     Defendants acted willfully or with reckless disregard as to their obligation to pay the Named Plaintiffs and all other FLSA Collective Members Overtime Premium Pay, and accordingly, the violation was willful for purposes of the FLSA, 29 U.S.C. §§ 255(a) and 260.

88.     Defendants are jointly and severally liable to the Named Plaintiffs and all other FLSA Collective Members under the FLSA for their failure to pay Overtime Premium Pay to the Named Plaintiffs and all other FLSA Collective Members in an amount equal to such unpaid Overtime Premium Pay.

89.     Defendants are also jointly and severally liable to the Named Plaintiffs and all other FLSA Collective Members for liquidated damages on unpaid Overtime Premium Pay, as well as attorneys' fees, costs, interest, and all other relief deemed just and proper.

///

///

///

///

## COUNT II
## FAILURE TO PAY OVERTIME
## MASSACHUSETTS FAIR MINIMUM WAGE ACT ("FMWA"), M.G.L. c. 151, *et seq.*
### (On Behalf of Named Plaintiffs and The Proposed Class Against All Defendants)

90.     Named Plaintiffs, and the Class repeat and incorporate by reference all allegations above and below as if fully set forth here.

91.     Neither Named Plaintiffs nor the Class Plaintiffs are exempt from the wage and overtime requirements of the Massachusetts Minimum Fair Wages Act ("MFWA").

92.     Defendants must pay Named Plaintiffs and the Class Plaintiffs time-and-one-half for all time worked over the 40-hour per week mark in any given week.

93.     Defendants knew that Named Plaintiffs and the Class Plaintiffs regularly workd over 40 hours per week and were not paid overtime premium pay for all the hours they worked over the 40-hour per week mark each week.

94.     Defendants' failure to pay Named Plaintiffs and the Class Plaintiffs overtime wages for work performed over the 40-hour per week mark violates the MFWA for which all Defendants are jointly and severally liable.

95.     Defendants' failure to pay Named Plaintiffs and the Class Plaintiffs overtime wages for work performed over the 40-hour per week was willful.

96.     Defendants are jointly and severally liable to Named Plaintiffs and the Class Plaintiffs for their failure to pay overtime premium pay in an amount equal to such unpaid overtime premium pay.

97.     Defendants are jointly and severally liable to Named Plaintiffs and the Class Plaintiffs for liquidated treble damages on unpaid overtime premium pay.

98.     Wherefore, Named Plaintiffs and the Class Plaintiffs ask this Honorable Court to award them the value of all unpaid wages, all unpaid overtime wages, all liquidated damages allowed under the law, as well as attorneys' fees, costs, interest, and all other relief this Court deems just and proper.

## REQUEST FOR RELIEF

WHEREFORE, Named Plaintiffs Davyn Encarnacion and Ricquan Jones, individually and on behalf of similarly-situated employees, respectfully request as follows:

A.     That Defendants be summoned to appear and answer this Complaint;

B.     For an order of this Honorable Court entering judgment in their favor against Defendants, jointly and severally, in their actual economic damages in an amount to be determined at trial;

C.     For liquidated and/or treble damages;

D.     For their attorneys' fees, costs, and pre-and post-judgment interest;

E.     For certifying the Class as requested herein;

F.     Appointing Plaintiffs and their counsel to represent the Class;

H.     For such other and further relief, including, but not limited to, injunctive relief, compensatory damages, and punitive damages, as this Court deems necessary, just and proper.

Respectfully submitted,
PLAINTIFFS, DAVYN ENCARNACION, and
RICQUAN JONES
By Their Attorneys,


*/s/ John P. Kristensen*
Chip Muller, Esq. (BBO #672100)

Muller Law, LLC
47 Wood Avenue
Barrington, RI 02806
(401) 256-5171
*chip@mullerlaw.com*

John P. Kristensen, Esq. (*Pro Hac Vice*)
Carpenter & Zuckerman
8827 W. Olympic Blvd.,
Beverly Hills, CA 90211
T: 310-273-1230
*kristensen@cz.law*

### DEMAND FOR JURY TRIAL

Plaintiffs Davyn Encarnacion and Ricquan Jones, individually and on behalf of all similarly-situated employees, by and through their attorneys, demand a TRIAL BY JURY on all counts so triable.

*/s/ John P. Kristensen*
Chip Muller, Esq. (BBO #672100)
John P. Kristensen (*Pro Hac Vice*)

Dated:   April 26, 2023

## <u>CERTIFICATE OF SERVICE</u>

I certify that on Wednesday, April 26, 2023, a true and correct copy of the attached **FIRST AMENDED CLASS AND COLLECTIVE COMPLAINT FOR DAMAGES & INJUNCTIVE RELIEF** was served via CM/ECF and on all parties of record pursuant to Fed. R. Civ. P. 5:

| | |
|---|---|
| Diane M. Saunders | Chip Muller |
| **OGLETREE, DEAKINS, NASH,** | **MULLER LAW, LLC** |
| **SMOAK & STEWART, P.C.** | 47 Wood Avenue |
| One Boston Place | Barrington, RI 02806 |
| Suite 3500 | Phone: (401) 256-5171 |
| Boston, MA 02108 | *chip@mullerlaw.com* |
| Phone: 617-994-5701 | |
| *diane.saunders@ogletreedeakins.com* | ***Co-Counsel for Plaintiffs*** |

***Counsel for Defendants***

_/s/ John P. Kristensen_

John P. Kristensen